**People of the State of Illinois, Plaintiff-Appellee,
v. Alfonso Velez, Defendant-Appellant.**

**Gen. No. 50,695.**

First District, First Division.

June 13, 1966.

Glenn Greenwood, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Alfonso Velez, was found guilty by a jury of the unlawful sale of narcotic drugs, and was sentenced to a term in the penitentiary of not less than ten nor more than eleven years. He filed a writ of

error in the Supreme Court, and the cause was transferred here.

On appeal, the defendant contends that he is entitled to a reversal of his conviction because of the following errors: (1) counsel was wrongfully prevented from cross-examining a prosecution witness as to criminal charges then pending against him; (2) a scientific experiment was performed in court and a similar test performed on the night of the arrest by a police officer who was not qualified as an expert, and without adequate controls; (3) the testimony of an informer was not corroborated; (4) defendant was denied access during the trial to grand jury minutes containing the testimony of the informer; (5) the court failed to require a police officer, who remained in the courtroom to assist the prosecution, to testify first; (6) hearsay evidence was improperly received in the preliminary hearing; (7) the court refused to order the court reporter to read back a witness's prior testimony; (8) prejudicial remarks were made by the prosecutor during closing argument; and (9) the delay in supplying a copy of the trial transcript to the defendant constituted a denial of due process and of equal protection of the laws.

Defendant's arrest and conviction arose from the enforcement technique which has become known as the "controlled purchase" of narcotics. On March 22, 1963, Gene Anderson, a police informer and former narcotics addict, contacted Chicago police officers and told them he could make a purchase of narcotics. A thorough search of Anderson's person and clothing disclosed that he did not possess any narcotics or money. The police then issued to Anderson $15 in currency, having first recorded the serial numbers of the bills and having dusted them with a fluorescent powder which is invisible to the naked eye but which can be viewed under a special light. Anderson and police officers Rigoni, Laurence, and Policewoman Scannell then proceeded in an unmarked

police car to the vicinity of 3108 W. Madison Street in Chicago. Anderson entered the El Quillo tavern at that address, while the officers watched from their car, parked across the street. About ten minutes later, the defendant emerged from the tavern with another man, and Officers Rigoni and Laurence followed them on foot while Policewoman Scannell remained in the car. The men walked about a block to a rooming house, from which they emerged about five minutes later, according to Officer Rigoni, and walked back to the tavern. About three minutes after their return, Anderson emerged from the tavern and turned over to the officers a tinfoil package which the officers determined contained narcotics. The officers entered the tavern, and arrested the defendant and his companion. A search of the defendant and of the currency in the cash register did not produce the marked bills. The officers then produced a "black light," and tested the hands of persons within the tavern. The defendant's hands showed the presence of traces of the powder which the officers had dusted onto the currency given Anderson. Officer Rigoni testified that he then informed the defendant of this fact. The officers later searched the rooms of the defendant and his companion at the rooming house, but failed to find any of the marked money.

Anderson testified that when he entered the tavern he approached the defendant and told him that he wanted to purchase some narcotics. The defendant told Anderson that he would sell a half a gram of "stuff" for $25, and that Anderson would have to give him the money and then wait for ten minutes. When Anderson told the defendant he only had $15, the defendant conferred with his companion and then told Anderson, "I'd have to take a little out of the bag." Anderson put the money on the bar, and the defendant picked it up, counted it, and put it in his pocket. The defendant and his companion

then left the tavern, and returned ten or fifteen minutes later and gave Anderson a tinfoil package. Anderson then left the tavern and turned the package over to the police.

The defendant testified that on the night he was arrested he did not see Anderson in the tavern, did not talk to him, and did not sell him narcotics. He said that he had seen Anderson once before, in a poolroom about a month earlier, but had not talked to him. He testified that on the evening of his arrest he and his companion left the tavern and walked to the rooming house where they both lived, and that twenty minutes later, after the defendant had changed his shoes, both men returned to the tavern. When the police entered the tavern, the defendant was drinking beer and talking to the bartender. After the police had searched the defendant, and had taken away his money, they tested his hands under the "black light," and according to the defendant told him nothing about the results of that test. His money was then returned to him. The police then searched both the defendant's room and that of his companion, and took both men to the police station.

The defendant first contends that he was deprived of a fair trial because he was not permitted to cross-examine Anderson, in the presence of the jury, as to burglary charges then pending against him. Relying upon People v. Mason, 28 Ill2d 396, 192 NE2d 835, defendant contends that questioning as to charges pending against the informer was permissible to show that Anderson's testimony might be influenced by interest, bias, or motive to testify falsely.

On cross-examination, Anderson was asked, "Were you ever picked up for burglary?" The State's objection was overruled, and the witness answered in the affirmative. Counsel then inquired, "How many times were you picked up for burglary?", and when the State again ob-

jected the court and counsel discussed the matter in chambers. Upon returning to open court, the trial judge ordered stricken "any questions about any arrest of this witness for burglary or anything of that kind," and instructed the jury to disregard them.

The record shows that on the following day, the court permitted defense counsel to interrogate Anderson under oath, but outside the presence of the jury, as to an arrest for burglary and possible harassment by the police. At this hearing, Anderson testified that in the last eight years he had been arrested three or four times for disorderly conduct, as a "loitering addict." He also testified that in December of 1962 he has been arrested for attempted burglary, and that the charges resulting from that arrest were still pending. Counsel asked whether Anderson had ever been promised that the burglary charge would be dropped if he cooperated with the police in having arrested people suspected of selling drugs, and Anderson answered no. At the close of the hearing, all of which was outside the presence of the jury, the court held that counsel had no evidence of any such promises by the police, and that testimony before the jury as to the burglary charge was not proper in the case. Upon the request of the Assistant State's Attorney, the court admonished defense counsel not to go into any of Anderson's arrests in the presence of the jury.

In People v. Mason, 28 Ill2d 396, 192 NE2d 835, the defendant was convicted of the unlawful sale of narcotics in a transaction which involved an informer and three narcotics officers. At the trial, the officers testified for the State but the informer did not. In cross-examining the officers, defense counsel sought to establish that some or all of the officers had been suspended from the police force and that criminal charges were then pending against them. Objections by the State to these questions were sustained by the court on the

grounds that the questions were immaterial and exceeded the scope of direct examination. At a discussion in chambers, it was admitted that charges were pending against one of the officers.

On review, our Supreme Court reversed the conviction, holding that, ". . . the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely." 28 Ill2d at 401. The court then discussed Alford v. United States, 282 US 687, decided in the United States Supreme Court in 1931, and other cases stating the same rule. Applying that rule to the facts of the Mason case, the court stated:

> In the present case we have not only the apparent arrest and indictment of one, if not two, of the State's witnesses, but also their suspension as narcotics investigators, in which very capacity they arrested the defendant and are now testifying against him. Since the informer did not testify, the inspectors were the sole witnesses to the alleged sale of narcotics. Under these circumstances the defendant had a right to cross-examine to show whatever bias or prejudice the witnesses might have. The effect of such evidence in determining whether or not the witnesses were in fact biased or prejudiced would be for the consideration of the jury.
>
> The scope of cross-examination is generally within the trial court's discretion. However, the widest latitude should generally be allowed the defendant in cross-examination for the purpose of establishing bias. (People v. Naujokas, 25 Ill2d 32.) In the present case the trial court cut off all inquiry on subjects with respect to which the defense was entitled to a reasonable cross-examination. This was an abuse of discretion and prejudicial error. (28 Ill 2d at 402, 403.)

331

■ In the case at bar, the sole witness to the alleged sale was the informer, Anderson. It was admitted during the hearing outside the presence of the jury that criminal charges were then pending against Anderson. It is true that defense counsel apparently was unable to present any evidence of actual promises made to Anderson by the police, or of any harassment. But under the rule as stated in Mason and as followed in People v. Soto, 64 Ill App2d 94, 212 NE2d 353, the determination of whether or not the witness was in fact biased or prejudiced was for the consideration of the jury. For this reason, the defense was entitled to cross-examine Anderson before the jury as to the pending burglary charges, and the trial court's ruling to the contrary was an abuse of discretion and prejudicial error.

Although this finding necessitates a new trial in this case, we will nevertheless consider briefly the other assignments of error to facilitate that trial. Defendant contends that the trial court erroneously permitted Officer Rigoni to perform a demonstration of the "black light" and the fluorescent powder before the jury, and to testify as to the test of the defendant's hands that he had made on the night of the alleged sale. The record shows that, after orally testifying about the operation of the light and powder, Officer Rigoni turned it on and tested the hands of the jurors under it. He then dusted a dollar bill with powder which he testified was the same kind as was used on the night of the arrest, and passed the dollar bill among the jurors. He then tested the jurors' hands under the "black light," and pointed out that the tips of their fingers were green. Officer Rigoni testified that the "black light" was in the same condition as it was on the night of the arrest.

Defendant contends that the court was in error in allowing this demonstration because Officer Rigoni was not qualified as an expert, and because the demonstra-

tion was not adequately controlled. He objects on the same grounds to the admission of testimony as to the test performed on the defendant's hands on the night of the arrest.

■ Our interpretation of the evidence does not warrant the conclusion that an expert was required for the performance of this simple test, or to interpret its results. It is well established that the trial judge has a wide degree of discretion in ruling upon the permissibility of demonstrations in the courtroom, and upon the admissibility of testimony relating to experiments performed outside of court. McCormick on Evidence, ch 20, § 169 (1954). We do not consider the decision of the trial court in this case to be an abuse of that discretion, even considering the fact that the defendant did not receive notice before the trial that the State would make such a demonstration.

■ The next contention made by the defendant is that the informer's testimony was not corroborated, and that the conviction should therefore be reversed on the authority of People v. Bazemore, 25 Ill2d 74, 182 NE 2d 649. In that case, the arrest was made two months after the alleged sale; there was no police surveillance of the transaction whatever; and nothing was offered in corroboration of the informer's accusation that the defendant was the seller. In the case at bar, the informer's testimony was corroborated by the fact that fluorescent powder was found on the defendant's hands. Furthermore, the police officers, while they did not see the actual transaction, maintained close surveillance of the tavern, and arrested the defendant minutes after the sale allegedly occurred. These facts distinguish this case from Bazemore. See also People v. Drumwright, 48 Ill App2d 392, 199 NE2d 282.

■ The defendant next contends that the trial court's refusal to allow him access to the minutes of

Anderson's testimony before the grand jury constitutes reversible error under the holding of our Supreme Court in People v. Johnson, 31 Ill2d 602, 203 NE2d 399. In that case, a prosecution for rape, defense counsel was denied access to the testimony of the prosecutrix before the grand jury. The Supreme Court found that there were discrepancies and alleged improbabilities in the testimony of the prosecutrix at the trial, and that her testimony was vital to the State's case. In the case at bar, we have examined Anderson's testimony at the trial and do not find any improbabilities or discrepancies. Furthermore, the State has filed a supplementary record containing Anderson's testimony before the grand jury, and we find nothing in that testimony which is at all inconsistent with Anderson's testimony at the trial. We therefore conclude that the defendant was not prejudiced by the court's refusal to grant him access to the grand jury minutes.

Defendant further contends that it was reversible error for the court to permit Officer Rigoni to remain in the courtroom during the testimony of the informer Anderson without requiring Rigoni to testify first. In People v. Miller, 26 Ill2d 305, 186 NE2d 317, the court held that it is not reversible error for a trial judge in the exercise of sound judicial discretion to exempt a police officer from an order excluding all witnesses, in the absence of a showing of prejudice to the defendant. The court observed that such was the practice in the Criminal Court of Cook County, and went on to hold that to show prejudice the defendant must show more than the mere fact that the officer had an opportunity to hear the complaining witness testify before him. 26 Ill2d at 307, 308.

██ ██ In the case at bar, defendant has made no showing of any prejudice resulting from the presence of Officer Rigoni in the courtroom during the testimony of Anderson. Therefore the holding in Miller, which

334

is binding upon this court, is dispositive of this contention.

The defendant next alleges that the admission of hearsay evidence in the preliminary hearing in this case was erroneous and materially prejudiced his rights. Officer Rigoni, the only witness testifying at that hearing, related to the court some of the statements made to him by the informer, Anderson. The defendant contends that if this hearsay evidence had been rejected, the State would have been forced to produce Anderson himself, and the defense would have had a valuable opportunity to cross-examine him.

■ ■ We have not been referred to, nor have we found, any authority dealing directly with this problem. In People v. Morris, 30 Ill2d 406, 197 NE2d 433, our Supreme Court considered the question of whether the State was obliged to furnish counsel to an indigent defendant at the preliminary hearing, and stated:

> A preliminary hearing in Illinois is not a "critical stage" where rights or defenses must be raised or lost, and neither is it a proceeding at which pleas are made or received. Rather, the scope and purpose of preliminary proceedings are in general to ascertain whether a crime charged has been committed and, if so, whether there is probable cause to believe that it was committed by the accused, (14 ILP, Criminal Law, sec 171). Even then a finding of probable cause is not binding upon a subsequent grand jury. These things being so, we see no basis for saying that the right to counsel arises upon preliminary hearing, or that fundamental fairness requires it. (30 Ill2d at 411.)

Similarly, we find that fundamental fairness does not require that hearsay evidence be excluded at the preliminary hearing. Our Supreme Court made clear in People v. Jones, 19 Ill2d 37, 166 NE2d 1, that an indict-

335

ment cannot be challenged on the grounds that it was based on testimony which was in part or wholly hearsay. We see no reason to apply a more stringent rule upon the preliminary hearing, the purpose of which, at least in this case, is to determine whether the defendant is to be held over for grand jury proceedings.

 The defendant also assigns as error the trial court's refusal to order the court reporter to read back, during the cross-examination of Officer Rigoni, statements made by Rigoni during his direct examination which defense counsel thought were contradictory. The control of the conduct of a trial is generally within the discretion of the trial judge. From our review of the record in this case, we conclude that the court's refusal to order the court reporter to read back prior testimony was not an abuse of that discretion; and furthermore that the court patiently gave defense counsel wide latitude in matters which counsel wanted to bring to the attention of the jury.

 Defendant also contends that remarks made by the Assistant State's Attorney in closing argument were improper and prejudicial. The remark to which he takes particular exception was, "There was only one way for him to get that powder, ladies and gentlemen, that was from the money." No objection was made during the trial to this remark, and it is well established that such an objection cannot be raised for the first time on appeal. But in any case, even if a timely objection had been made, we find nothing improper in the remark.

 A final contention made by the defendant is that the failure of the court reporter to supply him with a transcript of his trial until more than a year after its conclusion constituted a denial of due process of law and of equal protection of the laws. Although this delay, and the circumstances occasioning it, are

336

regrettable, we see no merit to the contention that it should be elevated to the status of a denial of due process or of equal protection, and defendant has cited no authority supporting such a conclusion.

By reason of the refusal to permit cross-examination of the informer as to criminal charges then pending against him, the conviction must be reversed and the cause remanded to the Criminal Division of the Circuit Court of Cook County for a new trial.

Reversed and remanded.

KLUCZYNSKI, P. J. and MURPHY, J., concur.