THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DWAYNE V. Voss, Defendant-Appellant.

(No. 54687;

First District—June 28, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James R. Truschke, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The defendant, Dwayne V. Voss, appeals from a judgment of the Circuit Court of Cook County following a jury trial finding him guilty of voluntary manslaughter. He was sentenced to a term of eight to twenty years in the State Penitentiary.

At about 1:00 A.M. on April 13, 1968, four boys went to the rear of a building at 4622 North Clifton to "tease the winos." The defendant testified the owner of the building at that address asked him to stay at his apartment because it had been burglarized the previous evening. He said that someone threw a bottle through the window and he went out with the owner, Dan Patterson, to look around. They found nothing and went inside, but he went back outside sometime later to check the windows. He saw four persons apparently throwing something at the rear of the building, and he took out his fishing knife. The persons tried to run away, but the defendant grabbed one, Roger Curington, who struggled and pleaded to be turned loose, saying he had not done anything. During the struggle the defendant inflicted seven knife wounds, including one to the chest which proved fatal. The deceased was fourteen years old and weighed 125 pounds. Voss was twenty-two years old, weighed 140 pounds, and was taller than the boy.

When the defendant was arrested a short time later, he was given the *Miranda* warnings and then asked if he had done the stabbing. He replied, "Yes, I was angry. I stabbed him." The officer told him if the victim died it would be murder, and the defendant replied, "I don't give a god damn."

On appeal, the defendant contends the jury should have been given instructions on involuntary manslaughter and accident; that the court erred by "chilling" his attempt to impeach a prosecution witness and

by refusing to allow a prior statement of the witness into evidence; that the misconduct of the prosecutor in his closing statement deprived him of a fair trial; and that the sentence was too severe. In addition, the defendant filed a *pro se* brief, which we have considered along with the brief filed by his counsel.

■■ It was not error to omit instructions on involuntary manslaughter and accident. The police officer quoted the defendant as saying, "Yes, I was angry. I stabbed him." This admission and the fact there was a total of seven wounds inflicted in someone who was struggling to get away is inconsistent with both accident and the mere recklessness required for involuntary manslaughter.

The court's conduct with regard to the impeachment of the State's witness was proper. When the defense began cross-examining Harold Fields, one of the four boys chased by the defendant, he was asked about a statement he had signed regarding the incident. Defense counsel asked, "Did I read this to you?", and the witness said, "Yes." Then the witness stated he had signed the statement, but it was prepared by counsel for the defense and he didn't know what was in it. The State asked for a conference and pointed out if the witness were to deny making any part of the statement, the defense attorney might be forced to take the witness stand, and the State would object to his doing that.

■■ The defendant claims the court discouraged defense counsel from making use of the exhibit and thereby "chilled" his attempt to impeach Fields. This is not true. In chambers, counsel for the State said:

"MR. MOTHERWAY: The State has a right to find out whether the one who wrote that document read it back to the witness truly and accurately, by way of cross examination and otherwise.

THE COURT: You can get to that, but as far as I am concerned if this witness has made previous contradictory statements I want to know it and I want the jury to know it."

There was no "chilling" because immediately after the conference defense counsel used the statement in his cross-examination of the witness.

■■ The defendant also claims the court erred by remarking that the prior statement of the witness was not sworn to. There was no error because the judge made no ruling or indicated the statement used for impeachment had to be under oath. He merely summarized the reasons for being careful with regard to the presentation of evidence and remarked the statement was not taken under oath.

The defendant next complains the court erred in refusing to allow Harold Fields' prior statement to be read to a defense witness, Dan Patterson, for the purpose of contradicting Fields' testimony. Defense

counsel questioned Patterson, who was present when Fields signed the statement, about the manner in which the interview was conducted and about what Fields told him:

"Q. And I asked Harold Fields questions and he told me what occurred on April 13th, is that correct?

A. Yes, that's correct.

Q. And after he told me what occurred did I read over to him and repeat what he had told me?

MR. MOTHERWAY: Object. It would be a conclusion by the witness.

THE COURT: Yes, sustain the objection.

\* \* \*

MR. GORMAN: May it please the court, I would like to read the statement that he gave me and ask him if this is the statement that Harold Fields gave me. I want to impeach the testimony of Harold Fields, and this is, in my opinion, the proper way to do it, sir.

\* \* \*

THE COURT: Mr. Gorman, you may ask this witness what was said."

■■ The ruling of the trial court was correct. Patterson could not have known of his own independent knowledge whether the purported statement of Harold Fields, which defense counsel wanted to read, was the same one read at the interview. Furthermore, the defense was in no way prejudiced, because Patterson was allowed to testify at length about what Fields had said at the interview.

■■ Next, the defendant argues the closing argument of the State deprived him of a fair trial. It should be noted the defendant neither objected to the remarks at trial nor included them in the motion for a new trial. Under these circumstances the law is clear he waived his objections and may not argue them on appeal. (*People v. Velez* (1966), 72 Ill.App.2d 324; *People v. Irwin* (1965), 32 Ill.2d 441.) Even if these defects were not present, a reading of the record indicates the remarks were not significantly prejudicial and were not a material factor in the defendant's conviction.

■■ Finally, the defendant asserts the sentence was too severe. After due consideration of this question and because of his youth and the possibility for rehabilitation, this court will reduce his sentence to a term of five to fifteen years in the Illinois State Penitentiary.

For these reasons, the judgment of the Circuit Court of Cook County is affirmed, and the sentence is reduced to five to fifteen years in the State Penitentiary.

Judgment affirmed and sentence reduced.

BURMAN and ADESKO, JJ., concur.