THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANKLIN RICHMOND, Defendant-Appellant.

First District (3rd Division)   No. 79-74

Opinion filed May 28, 1980.

James J. Doherty, Public Defender, of Chicago (Marc Fogelberg, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Based on the identifications of the defendant by the victim and his companion, Franklin Richmond was convicted by a jury of attempt murder and armed robbery. But the defense was not allowed to ask the companion in the presence of the jury if she had been aware of outstanding arrest warrants against her when she agreed to give her statement to police. Because the cross-examination of a State's witness concerning her possible bias, interest or motive to testify falsely was restricted, the case must be sent back for a new trial.

The offense took place on the evening of December 30, 1975, in the vicinity of Chicago Stadium. The victim, Rodney Sanders, met Mary Yother, a prostitute, in a bar. They agreed to a business transaction and drove in Sanders' car to a nearby vacant lot looking for seclusion. When they stopped the car, however, a man entered the vehicle and robbed them. Sanders fled the car, but was shot as he ran and suffered the permanent loss of vision in his right eye. Both Sanders and Yother identified the defendant as the gunman in court.

On cross-examination, defense counsel tried to ask Yother if she knew of any outstanding warrants against her and if she had the hope of a reward for her testimony against the defendant. The questions were initially asked outside the presence of the jury. Yother first replied that she did not know of any outstanding warrants, but then admitted that the prosecutor had shown her her arrest record, which set out two outstanding bond forfeiture warrants. She denied receiving any reward for her testimony, and said that she had come to court only to tell the truth. The trial court refused to allow this line of questioning before the jury, citing the prejudice to the witness. Defendant now argues that he should have been allowed to examine Yother before the jury on this point so that the jury could decide if she was testifying in return for lenient treatment and so discount her testimony.

■■ Showing a witness' bias, interest or motive for testifying falsely is an accepted method of impeachment. (*People v. Kellas* (1979), 72 Ill. App. 3d 445, 452, 389 N.E.2d 1382, 1389.) Questioning a witness about unrelated charges is proper if it tends to show that the witness' testimony was affected by fear of punishment or hope of leniency in the disposition of the charges. (*People v. Mason* (1963), 28 Ill. 2d 396, 401-02, 192 N.E.2d 835, 838.) Defense counsel should be allowed to present a theory that the witness is not credible because she is being rewarded for her testimony, and counsel should be allowed to expose to the jury the alleged facts so that the jury can draw the appropriate inferences concerning the reliability of the witness' testimony. *People v. Thompson* (1979), 75 Ill. App. 3d 901, 903, 394 N.E.2d 422, 425.

■■ The State argues that since Yother denied knowing of any outstanding warrants, cross-examination was properly curtailed. The determination of whether she did in fact know of the warrants, did in fact hope for a reward for her testimony and was in fact believable was for the jury. The defense was entitled to cross-examine her before the jury about the outstanding charges, even if the witness denied any promise of reward or leniency. (*People v. Velez* (1966), 72 Ill. App. 2d 324, 332, 219 N.E.2d 675, 679.) "That defense counsel could not show beforehand that any promises of leniency had been made, was not an adequate reason for denying counsel the right to ask questions concerning the pending charges." *People v. Baptiste* (1976), 37 Ill. App. 3d 808, 812, 347 N.E.2d 92, 95.

The State also suggests that there was no harm to the defendant. But cross-examination to show bias, interest or motive to falsify is a matter of constitutional right. (*Davis v. Alaska* (1974), 415 U.S. 308, 318 n. 6, 39 L. Ed. 2d 347, 354 n.6, 94 S. Ct. 1105, 1111 n.6; *Smith v. Illinois* (1968), 390 U.S. 129, 19 L. Ed. 2d 956, 88 S. Ct. 748; *Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218.) It cannot be defeated by a claim of lack of prejudice. (*Kellas*, at 454.) It is impossible to foretell how the witness would have stood up under cross-examination before the jury, nor is it certain that the jury would not have detected in her demeanor or tone of voice that she was lying. These are the observations that a jury as trier of fact, not a reviewing court, alone can make, and that is why an error of this type should not be passed off as harmless. When the credibility of witnesses is at issue, the trial court should tread lightly, and evidence which tends to affect the weight of the testimony should be presented to the jury unhindered. The defendant's convictions must be reversed and the cause remanded for a new trial.

Defendant also questions the admissibility of testimony concerning various identifications made by Sanders and Yother. The question revolves around the legality of the defendant's arrest. Testimony at the

hearing on Richmond's motion to suppress revealed that, on the day of the offense, Yother accompanied Sanders to the hospital, then was taken to the police station where she picked the defendant's picture out of some 400 photographs which she examined. The police investigator, Officer Cozzi, was unable to locate the defendant that night and so issued an intradepartmental stop order on Richmond. The next day, December 31, Cozzi, according to his testimony, spoke with officers from the 12th District Tactical Unit, which patrolled an area the defendant was known to frequent. He told them why he wanted them to arrest Richmond. On January 5, 1976, Cozzi went to the hospital and showed Rodney Sanders an array of photographs. Sanders picked out the defendant. Based on the photographic identifications by Yother and Sanders, Officer Cozzi had probable cause to arrest Richmond.

On January 6, 1976, Richmond was arrested while at the apartment of a friend. The arrest was made when police entered the apartment without a warrant. The defendant testified that it was Officer Cozzi who arrested him, and that when Cozzi came into the friend's apartment, announcing that it was a raid, Cozzi pointed Richmond out to two officers and said, "We want him." If Richmond's testimony that Cozzi was present at his arrest is reliable, there is no question that the officers who placed Richmond under arrest had probable cause for doing so. But Cozzi's testimony was much more favorable to the defendant on this issue. Cozzi testified that the arrest was made by two officers of the tactical unit he met with on December 31. Although he did not know the names of the arresting officers, they were among those he spoke with at the 12th District Tactical Unit and they arrested Richmond based on the information he gave them. The impression Cozzi's testimony leaves is that he was not present at the actual arrest.

Following the arrest, Richmond was placed in a lineup at the 11th District police station. Sanders viewed the lineup and identified the defendant.

■■ Had Richmond been arrested illegally, the lineup identification should have been suppressed and a hearing should have been held to determine if Sanders' in-court identification was the result of or was strengthened by the lineup. If so, it too should have been suppressed. (*United States v. Crews* (1980), ___ U.S. ___, 63 L. Ed. 2d 537, 100 S. Ct. 1244.) The arrest was not illegal, however, and so use of the identifications at trial was not error.

■■ Once Richmond testified that he was arrested without a warrant when he was not violating any laws, the burden of going forward shifted to the State. (*People v. McClinton* (1978), 59 Ill. App. 3d 168, 174, 375 N.E.2d 1342, 1348; *People v. Turner* (1976), 35 Ill. App. 3d 550, 567, 342 N.E.2d 158, 170.) It was required to prove that the arresting officer had

knowledge sufficient to warrant a man of reasonable caution to believe that an offense had been committed and that the person arrested had committed the offense. (*Beck v. Ohio* (1964), 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145, 85 S. Ct. 223; *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356, 358.) The trial court's ruling that the State met its burden was not manifestly erroneous.

If the trial judge relied on Richmond's own testimony that Cozzi was present at the arrest there is no question about its lawfulness. Yet, Cozzi testified that the arrest was made by officers from the tactical unit based on the information he gave them. But whoever actually made the arrest, it was proper, since it was based on the information Cozzi had.

Defendant, however, argues on this appeal that the testimony did not show that Cozzi had given the tactical unit officers who made the arrest any information which gave them probable cause for the arrest. He points out that Cozzi was unable to name the officers to whom he spoke on December 31, and could not name the arresting officers. However, Cozzi testified that the officers who arrested Richmond were the same ones to whom he had spoken earlier. In order for the officers making the arrest to act upon Cozzi's information, there must be some proof that they received it. (*People v. Kahl* (1978), 63 Ill. App. 3d 703, 708, 380 N.E.2d 487, 491.) The defendant's own testimony buttressed Cozzi's with respect to the information he gave the arresting officers. Defendant asserted that the arresting officers, when they entered the apartment, said that the police wanted him. This was circumstantial evidence that the tactical unit officers who made the arrest had received this information from Cozzi. The trial judge, sitting as finder of fact on the motion to suppress, was free to believe that Richmond was confused as to the presence of Cozzi at the arrest, but that the arresting officers actually received information from Cozzi regarding the offense for which Richmond was being sought. The record contained evidence sufficient to show probable cause in the hands of the arresting officers, and so the arrest was valid.

*People v. Moncrief* (1971), 131 Ill. App. 2d 770, 268 N.E.2d 717, is factually dissimilar. There the deputy sheriff who made the arrest did not testify and there was no evidence, direct or circumstantial, to show that he had received the information that the defendant was carrying contraband. The arrest was therefore quashed. While the direct testimony of the arresting officer is always preferable to circumstantial evidence showing the facts known to the arresting officer, the State here managed to fulfill its burden and demonstrate probable cause to arrest.

■■ Defendant finally contends that the full text of Sanders' statement to defense counsel should not have been admitted after a portion was used to impeach Sanders as a prior inconsistent statement. "[I]t is well settled that where a witness has been impeached by proof that he has made prior

inconsistent statements, he may bring out all of the prior statements to qualify or explain the inconsistency and rehabilitate the witness." (*People v. Hicks* (1963), 28 Ill. 2d 457, 463, 192 N.E.2d 891, 894.) The weight to be given to a prior inconsistent statement is for the jury to decide, and the jury should be allowed to hear the witness' entire prior statement to gauge how much credence to lend to the inconsistency. Once defense counsel opened the door by bringing up the inconsistent portion of Sanders' statement, the State could properly bring in the consistent portions. *People v. Torres* (1977), 53 Ill. App. 3d 171, 178, 368 N.E.2d 361, 366.

The defendant's convictions are reversed and the cause is remanded for a new trial.

Judgment reversed and remanded.

McNAMARA and RIZZI, JJ., concur.