**UNITED STATES of America ex rel. Charles FORD, Petitioner,**

v.

**Howard PETERS, Warden, Centralia Correctional Center, Respondent.**

**No. 86 C 1914.**

United States District Court,
N.D. Illinois, E.D.

Aug. 26, 1986.

Charles Ford, pro se.

Neil F. Hartigan, Atty. Gen. of Illinois by Terence M. Madsen, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM AND ORDER

BUA, District Judge.

Charles Ford ("petitioner") was charged with murder and attempt (murder) in the Circuit Court of Cook County, Illinois. After a bench trial, he was found guilty and sentenced concurrently to 20 years imprisonment for murder and 10 years for attempt. The Illinois Appellate Court affirmed the conviction. *People v. Ford*, 124 Ill.App.3d 1149, 89 Ill.Dec. 396, 480 N.E.2d 878 (1st Dist.1984).

After exhausting his state remedies, Ford filed a petition for a writ of habeas corpus with this Court claiming that the trial court committed reversible error by allowing the State to introduce evidence of a prior statement made out of court by a prosecution witness, Hattie Barnes, which was consistent with her in-court testimony. In response, the State ("respondent") has filed a motion for summary judgment.

After a careful review of the factual determinations of the Illinois Appellate Court, the Court grants respondent's motion for summary judgment and denies the writ. The Court's jurisdiction rests upon 28 U.S.C. § 2254.

## I. SCOPE OF REVIEW

■ Regarding the proper scope of review by a federal court in a habeas proceeding, this Court's analysis in *United States ex rel. Banks v. McGinnis*, 563 F.Supp. 819 (N.D.Ill.1983), *aff'd*, 746 F.2d 1482 (7th Cir., 1984) (unpublished order), sets forth the proper role of a federal court. From that analysis, it is clear that a federal court on habeas must apply the "presumption of correctness" to state appellate court underlying factual determinations in mixed questions of law and fact, although it may draw different conclusions as to those facts as found. On the other hand, the federal court need not be bound by those underlying factual determinations,

if it concludes that they are not "fairly supported by the record." *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981); *see also Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). Nor need the federal court apply the presumption if one of the first seven statutory exceptions to 28 U.S.C. § 2254(d) is found to exist or if the petitioner establishes by "convincing evidence" that the state court's findings are clearly erroneous. 28 U.S.C. § 2254(d).

The Court agrees with the state appellate court's underlying factual determinations. Since petitioner has not rebutted these determinations with "convincing evidence" and since none of the statutory exceptions exist, the Court will apply the "presumption of correctness" to these findings and apply the law accordingly.

## II. PETITIONER'S CLAIM

Petitioner contends that he was denied fundamental fairness and due process of law by the trial court's admission of a prior consistent statement made by Hattie Barnes to Officer Gehl. Petitioner claims that there was great prejudice in permitting Gehl to testify about Barnes' second statement identifying Ford as the shooter. Petitioner concludes that, without Gehl's testimony regarding her second statement, Barnes was an unbelievable witness and it was unlikely that the trial court would have found the petitioner guilty.

Respondent argues that because the petitioner attempted to impeach Barnes by introducing a part of her August 10, 1981 statement to Detective Gehl that it was entitled to introduce evidence of the balance of her statement to Gehl.

■ It is well settled that where a witness has been impeached by proof that he has made prior inconsistent statements, he may bring out all of the prior statements to qualify or explain the inconsistency and rehabilitate the witness. *People v. Hicks* (1963), 28 Ill.2d 457, 463, 192 N.E.2d 891, 894. The weight to be given to a prior inconsistent statement is for the jury to decide, and the jury should be allowed to

hear the witness' entire prior statement to gauge how much credence to lend to the inconsistency. *People v. Richmond* (1980), 84 Ill.App.3d 1017, 1021–11, 40 Ill.Dec. 434, 437–38, 406 N.E.2d 135, 138–39. Once defense counsel opens the door by bringing up the inconsistent portion of a witness' statement, the State could properly bring in the consistent portions. *People v. Torres* (1977), 53 Ill.App.3d 171, 178, 10 Ill.Dec. 766, 771, 368 N.E.2d 361, 366.

■ In the present case, Hattie Barnes was the key prosecution witness to the murder and attempt. She testified on direct examination that the defendant Charles Ford fired one shot at James Gibson and a second shot at Walter Sales. *People v. Ford,* 124 Ill.App.3d 1149, 89 Ill. Dec. 396, 480 N.E.2d 878, slip op. at 2. On cross-examination, Barnes testified that, prior to the shooting, she knew the defendant both as "Charles" and as "Sudden Death." *Id.* She also knew Charles Sewell, defendant's companion, as "Charles." *Id.* Barnes acknowledged that two police officers interviewed her on July 25, 1981; however, she denied that she "named the shooter as being Charles and Sudden Death as his companion." *Id.* She also stated that she did not see a gun in Sewell's hand on the night in question. *Id.*

Defense counsel questioned Barnes about a second interview with the police on August 10, 1981:

Q  Isn't it true that during that interview, you told the officers this: "Then both Charles and Sudden Death had their guns out and were running north through the vacant lot." Didn't you tell that to the detectives at that time?

A  No, I didn't.

*Id.* Defense counsel inquired of Barnes whether Charles Sewell was the father of her sister's baby. *Id.* She replied that he was, after which counsel asked:

Q  And this is the Sewell that you first identified as the shooter, but then later changed it to Charles Ford?

A  I never did identify him as the shooter.

*Id.* at 3, 124 Ill.App.3d 1149, 89 Ill.Dec. 396, 480 N.E.2d 878. On redirect examination, Barnes testified that she told the police that the real name of the person known as "Sudden Death" was Charles, but that she did not know his last name. *Id.* At the police station she identified a picture of defendant as the man known as Sudden Death. *Id.*

Chicago police detective Wayne Gehl testified on behalf of defendant that when he interviewed Hattie Barnes on July 25, 1981, she told him "Charles was the shooter and that his companion was Sudden Death," and she identified a photograph of defendant as being Sudden Death. *Id.* at 4, 124 Ill.App.3d 1149, 89 Ill.Dec. 396, 480 N.E.2d 878. Defense counsel then inquired:

Q Now, you had another interview with Hattie Barnes on August 10, 1981?

A Yes, sir.

Q And on that day, did she tell you that Charles Sewell had a gun?

A She didn't say Charles Sewell had a gun. She said both subjects had a gun, one being Charles Sewell.

*Id.* at 4–5, 124 Ill.App.3d 1149, 89 Ill.Dec. 396, 480 N.E.2d 878. On cross-examination, Gehl explained that he initiated the second interview with Barnes on August 10, 1981, for the purpose of clarifying facts in his mind, and asked her to repeat her statement of the events at the scene of the murder. *Id.* at 5, 124 Ill.App.3d 1149, 89 Ill.Dec. 396, 480 N.E.2d 878. Over defense objection the prosecutor was permitted to ask the following question:

Q And at that time, is it not a fact that Hattie Barnes told you that Charles Ford was the shooter?

A Yes.

*Id.*

From these trial transcript excerpts and the state appellate court findings, it is clear that defense counsel inquired about the inconsistency arising out of Barnes' statement made at the August 10, 1981 interview. Since the defense counsel asked about only a part of Barnes' statement, the Court finds that the prosecution was entitled on redirect examination to ask about and elicit the remainder of Barnes' August 10, 1981 statement. *People v. Richmond,* 40 Ill.Dec. at 437–38, 406 N.E.2d at 138–39. The Court finds that the defense counsel in this case opened the door by bringing up the inconsistent portion of Barnes' statement and therefore the State could properly bring in the consistent portions. *People v. Torres,* 10 Ill.Dec. at 771, 368 N.E.2d at 366.

Petitioner cites *People v. Emerson* (1983), 97 Ill.2d 487, 74 Ill.Dec. 11, 455 N.E.2d 41, in support of his argument that, where a prior consistent statement is relevant to show that one of the assailants had not participated in certain conduct, it is error for the trial court to allow a prior consistent statement. 74 Ill.Dec. at 16, 455 N.E.2d at 46. However, the court in Emerson went on to say that: "The only prior consistent statement relevant under the circumstances would be one concerning the actions of the two perpetrators, and it did not open the door to a gratuitous corroboration of Ray's testimony concerning the identity of his attackers." *Id.* In the present case, Barnes' statement of August 10, 1981 goes directly to the actions of the perpetrators Charles Ford and Charles Sewell, and therefore her entire statement would be relevant and admissible under the *Emerson* holding.

Accordingly, based on the state appellate court's findings, the Court holds that the trial court did not err when it permitted the prosecution to ask questions about and elicit the remainder of Barnes' August 10, 1981 statement.

### III. CONCLUSION

For the reasons stated above, plaintiff's petition for a writ of habeas corpus is denied.

IT IS SO ORDERED.