Andrew **BROOKS**, Plaintiff,

v.

John **FITZSIMMONS**, # 11251 and L. **Thezan**, # 9419, Defendants.

No. 85 C 7066.

United States District Court, N.D. Illinois, E.D.

April 28, 1987.

---

Kenneth N. Flaxman, Elizabeth R. Dale, Kenneth N. Flaxman P.C., Chicago, Ill., for plaintiff.

Michael Lieberman, James D. Montgomery, Office of Corp. Counsel, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Plaintiff, Andrew Brooks, brought this one-count civil rights action pursuant to 42 U.S.C. § 1983 against defendants John Fitzsimmons and Lawrence Thezan. Brooks alleges the defendants, in their capacity as detectives of the Chicago Police Department, deprived him of his liberty without due process of law when they allegedly wrongfully induced Sharon Morgan, a victim of an attempted rape they were investigating, to identify Brooks as the alleged attacker at a preliminary hearing. Morgan was able to make this identification at the preliminary hearing allegedly because Fitzsimmons and Thezan subjected Brooks to misleading visual and voice lineups and otherwise wrongfully influenced Morgan to identify him as the alleged attacker.

The defendants originally moved to dismiss the complaint on the theory that Morgan's subsequent in-court identification broke the causal chain between any wrongful conduct of defendants and Brooks' custody in jail following the preliminary hearing. The court denied the motion because, based on the allegations of the complaint "defendants created a suggestive environment calculated to induce the victim to identify plaintiff, even though defendants knew or had reason to know that plaintiff was not responsible for the crime." (*Brooks v. Fitzsimmons*, 85 C 7066, Order of March 10, 1986 at 4). Given those allegations, defendants would be liable if their conduct during the lineup was wrongful and if that wrongful conduct caused Brooks to be incarcerated.

The parties have now completed discovery in this case. Defendants have moved for summary judgment. For the following reasons defendants motion is granted.

## I.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* 106 S.Ct. at 2553.

To facilitate Rule 56's burdens, the parties must comply with the requirements of Local General Rule 12. Under Local General Rule 12(e) a party moving for summary judgment must serve and file a statement of the undisputed material facts which entitle it to summary judgment as a matter of law. That statement should make references to the affidavits, parts of the record, and other supporting materials relied upon to support the statement. *Abrams v. City of Chicago*, 635 F.Supp. 169, 171 (N.D.Ill.1986). In response, the nonmoving party must serve and file a concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue nec-

essary to be litigated. *Id.;* Local General Rule 12(f). Both parties have filed statements of facts pursuant to Local General Rule 12. The nonmovant has identified several facts which he contends are genuinely disputed. Although Brooks asserts the defendant police officers influenced Morgan to identify him in the lineup, he does not provide specific facts or evidence in his 12(f) statement which support his assertion. Because Brooks' assertions are factually unsupported, no reasonable jury could return a verdict in Brooks' favor and, therefore, defendants are entitled to summary judgment.

## II.

On June 6, 1984, Sharon Morgan reported to a police officer that she had been the victim of an attempted rape the night before. (R.3).[1] During a preliminary hearing, Morgan testified that she was walking home in the vicinity of 6214 North Kenmore in Chicago when two men grabbed her from behind, dragged her across the street to a grassy area of a parking lot, threw her down and attempted to rape her. (R.3). According to the transcript of the hearing, one of the suspects, identified by Morgan as Andrew Brooks, the plaintiff in this case, was on top of her as he removed her clothing. (R.4). The other suspect was the lookout. (R.4). As Brooks was removing her clothing, Morgan became ill and vomited. (R.4). This caused Brooks to remove his hand from her mouth and she began to fight, kick and scratch Brooks. (R.4). At this point Morgan was able to get away from Brooks and she ran. (R.4).

After Morgan made her report, on June 7, 1984, the case was assigned to Detectives Fitzsimmons and Thezan. (F.D.R.6). According to the deposition of Fitzsimmons, he contacted Morgan on June 8, 1984 by telephone. (F.D.R.9). During their conversation, Fitzsimmons asked Morgan if she could identify the offenders in the incident and she said yes. (F.D.R.10). Fitzsimmons invited her to come in and look at

photos. Morgan, however, failed to appear. (F.D.R.11). After Fitzsimmons contacted her again by telephone on June 25, 1984, Morgan went to the police station to view photographs. (F.D.R.11). Morgan called Fitzsimmons over when she found the photo of one her alleged assailants. (F.D.R.14). It was the photo of Andrew Brooks. (F.D.R.14). Fitzsimmons then put out a stop order for Brooks in the Daily Bulletin issued by the Chicago Police Department. (F.D.R.16–17). Subsequently two officers went to Andrew Brooks' home and informed him that the police were looking for him. (F.D.R. 22–23).

On July 27, 1984, Brooks appeared at the 24th District Police Station with his attorney, Ray Myles. (F.D.R.22–23). Fitzsimmons was contacted on the street and with his partner Thezan, they arrived at the 24th District. (F.D.R.23–24). At that time, Fitzsimmons informed Brooks of the investigation, arrested him, and told him he would have to stand in a lineup. (F.D.R. 24). After an arrest report was filed and while Brooks was being processed, Fitzsimmons returned to Area 6 Violent Crimes and contacted Morgan (F.D.R.25–26). Morgan agreed to come in and view a lineup. (F.D.R.16). Fitzsimmons then called the 14th District to have Brooks transported to Area 6 Violent Crimes. (F.D.R.26).

When Morgan arrived at Area 6, Fitzsimmons met with her in an interview room and informed her how a lineup was conducted and explained about the one-way mirror. (F.D.R.28). No one else besides Fitzsimmons and Morgan were present. (F.D.R.29). After talking with Morgan, Fitzsimmons asked his partner Thezan if enough fillers were available for the lineup. (F.D.R.29). Four individuals were used as fillers. (F.D.R.29). According to Thezan's deposition he obtained the fillers from the 19th District lockup which was located downstairs. (T.D.R.19). After reading the arrest reports and the physical descriptions of the individuals in the lockup, Thezan

---

1. Throughout the opinion the following abbreviations have been used to refer to exhibits submitted in support of the motion. "R."—Record; "D."—Deposition; "F."—Fitzsimmons; "T."— Thezan; "B."—Brooks; "P.H.R."—Preliminary Hearing Record; "M.S.R."—Motion to Suppress Record; "M."—Myles.

signed the fillers out and took them upstairs to the lineup room. (T.D.R.19–20). When Brooks arrived at Area 6, Thezan placed him in the lineup room and asked him in which position he wanted to sit. (T.D.R.21). According to Brooks' deposition, an unidentified police officer confronted him in the lineup room and threatened him. (B.D.R.58–59). This same officer also allegedly attempted to talk Brooks into confessing to the attempted rape. (B.D.R.59). Brooks described the others in the lineup as "bummish" in comparison to the clothes he was wearing. (B.D.R.65–68). Once the order of the lineup was determined, Thezan took down the names, race, sex, height, weight and age of all the fillers participating in the lineup. (T.D.R.23). When that was completed, Morgan, Brooks' attorney Myles and Fitzsimmons viewed the lineup. (F.D.R.30–33). Morgan identified Brooks as fitting the general physical description (weight, height and build) of the suspect. (F.D.R.34). According to Fitzsimmons, Morgan did not comment about other people in the lineup and neither he nor Myles said anything to her while she viewed the lineup (F.D.R.34–35/Myles D.R.9). No photo was taken of the lineup because no positive identification was made in the visual lineup. (T.D.R.29).

After Morgan viewed everyone in the lineup, Fitzsimmons asked her if she wanted to listen to the voices of the suspects and she agreed. (F.D.R.35). A statement which was made by the offender during the attempted rape was spoken by each suspect in reverse order of the visual lineup. (F.D.R. 36/T.D.R. 27/M.D.11). Each individual approached the door which was cracked open and from behind the closed curtain made the statement. (F.D.R.3–38). Morgan asked to hear Brooks' voice and one other voice again. (F.D.R. 37/T.D.R. 29/B.D.R. 74/M.D.R.12). After the two suspects repeated the statement, Morgan identified Brooks' voice. (F.D.R.38/M.D.-R.25). According to Brooks' attorney, Myles, none of the officers present said anything to Morgan to indicate who she should select.

After Morgan was taken out of the area, Brooks was placed in an interview room while an assistant state's attorney was called. (F.D.R.39–41/T.D.R.30). When the assistant state's attorney arrived he interviewed both Morgan and Brooks separately and he approved the charges for attempted rape. (F.D.R.42). Brooks was unable to post bond so he remained in custody. (B.D. R.89–93).

On August 21, 1984 a preliminary hearing was held. (P.H.R.1). Morgan made an in-court identification of Brooks as one of her assailants. (P.H.R.4). The Court found there was probable cause to arrest Brooks for attempted rape. (P.H.R.35).

On December 31, 1984 the Court heard testimony on Brooks' motion to suppress the identification testimony. The Court held that the identification that did take place should be suppressed because there was a substantial likelihood that Brooks would be prejudiced by the identification process. (M.S.R.19). The Court pointed to the discrepancy in complexion and clothing between the fillers and Brooks, and Morgan's uncertainty between the voices of two of the suspects. After the identification testimony was suppressed, the state motioned to *nolle prosse* and Brooks was discharged. (M.S.R.24). Brooks subsequently filed this § 1983 action.

### III.

Under § 1983 a plaintiff must establish the defendants (1) deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) that the deprivation was under color of state law. *Greco v. Guss*, 775 F.2d 161, 164 (7th Cir.1985). Brooks claims he was deprived of his liberty without due process of law when he was held in custody after Morgan identified Brooks' voice in a lineup conducted by Fitzsimmons and Thezan.

The due process clauses of the fifth and fourteenth amendments forbid lineups which are unnecessarily suggestive and conducive to irreparable mistaken identification. *Kirby v. Illinois*, 406 U.S. 682, 691, 92 S.Ct. 1877, 1883, 32 L.Ed.2d 411 (1972). The actual likelihood of misidentifi-

cation violates a defendant's right to due process. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). Several factors should be examined to determine whether such a likelihood exists: 1) the opportunity of the witness to view the criminal act at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of the witness' prior description of the criminal, 4) the level of certainty demonstrated by the witness at the confrontation, and 5) the length of time between the crime and the confrontation. *Id.* at 199, 93 S.Ct. at 382. Under the totality of circumstances, an identification could be reliable even though the confrontation procedure was suggestive. *Id.*

In *Neil,* the Court found no substantial likelihood of misidentification where the suspect was convicted of rape on evidence consisting in part of the victim's visual and voice identification of the suspect at a station-house showup. Although the seven month lapse between the rape and the confrontation was a serious negative factor, it was outweighed by other significant positive factors. In concluding there was no substantial likelihood of misidentification of the suspect, the Court considered the length of time the victim was with her assailant, the type of lighting available during the rape, the victim's thorough description of her assailant, and her conviction that she had no doubt that the suspect was the man that raped her. *Neil,* 409 U.S. at 200, 93 S.Ct. at 382; *United States ex rel. Hudson v. Brierton,* 699 F.2d 917 (7th Cir.), *cert. denied,* 464 U.S. 833, 104 S.Ct. 114, 78 L.Ed.2d 115 (1983).

In *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), the Court held the lineup a robbery suspect had been placed in was too suggestive and, therefore, violated the suspect's due process rights. The suspect was first put in a lineup in which two "fillers" were used. The fillers were approximately seven inches shorter and only the suspect wore a leather jacket which was similar to one worn by the robber. The witness who viewed the lineup could not identify the suspect. The police then set up a one-to-one confrontation between the witness and

the suspect. The two were placed in a room and seated across a table from each other. The witness still could not positively identify the suspect as the robber. Finally, within a week to ten days, another lineup was scheduled. This lineup consisted of five fillers and the defendant. Only the defendant had also been in the original lineup. The witness then positively identified the suspect as the robber. The Court found this lineup procedure was suggestive and undermined the reliability of the identification. *Id.* at 443, 89 S.Ct. at 1129. "In effect, the police repeatedly said to the witness, 'This is the man.'" *Id.*

The underlying premise of Brooks' complaint was that Thezan and Fitzsimmons influenced or coerced Morgan into making an identification of him during the voice line up. They were alleged to have done this at a time when they knew Brooks was not the attempted rapist. The significance of the allegedly misleading visual lineup was that it permitted Morgan to make the in court-identification. The evidence submitted on this motion, however, supports none of these critical allegations.

Brooks has not identified any evidence which suggest Fitzsimmons or Thezan did anything other than follow ordinary, investigative procedures. To establish that Fitzsimmons and Thezan had no probable cause to arrest him, Brooks relies on a statement of Thezan that an arrest warrant was not obtained because the state's attorney would not approve an arrest warrant on the basis of a photograph identification. Thezan's opinion as to what the state's attorney's office will do, of course, is not evidence the officers lacked probable cause to arrest Brooks. The police have probable cause to arrest an individual where the facts and circumstances within their knowledge and of which they have reasonable trustworthy information are sufficient to warrant a prudent person in believing the suspect had committed or was committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.

*Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

The physical description of one of the assailants closely matched Brooks' physical description and Morgan identified Brooks positively in a mug book. The court does not decide whether these facts gave probable cause to arrest Brooks, because that issue is not raised in this action. *See Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *People v. Richmond,* 84 Ill.App.3d 1017, 40 Ill.Dec. 434, 406 N.E.2d 135 (1980) (photo identification establishes probable cause to arrest). The facts make plain, however, that contrary to Brooks' assertion, Thezan and Fitzsimmons did not submit Brooks to a lineup knowing or possessing reason to know that Brooks was not responsible for the crime.

Brooks has likewise submitted no evidence supporting his assertion that defendants influenced Morgan to identify him in a visual or voice lineup. In fact, it is undisputed that Thezan did not even speak to Morgan the entire day of the photo identification or the day of the visual lineup.[2] It is also undisputed that Fitzsimmons did nothing to single out Brooks, in any way, during the voice lineup.

The visual lineup was controlled by Thezan, who selected the fillers. All the persons in the lineup were black men of average height, weight, and build. The only distinctive feature of Brooks was that he was dressed better than the others. Morgan was unable to make a positive identification from the visual lineup.

Fitzsimmons then asked Morgan to listen to the voices of the people in the lineup.[3] Fitzsimmons opened the door and told Thezan to conduct a voice lineup. Each person, in reverse order, made the requested statement. Morgan identified Brooks after he spoke but asked to rehear Brooks and another person to be sure. After they repeated the statement she identified Brooks' voice as that belonging to the man who attempted to rape her.[4] No evidence suggests Thezan or Fitzsimmons engaged in any coercive or suggestive conduct that encouraged Morgan to identify Brooks as the man who attempted to rape her.

At the preliminary hearing no evidence concerning the visual or voice lineup was introduced. Neither Fitzsimmons nor Thezan testified at the hearing. Morgan identified Brooks as the man who attempted to rape her, and the court found probable cause to charge Brooks with attempted rape. Unable to post bond, Brooks was incarcerated.

The court concludes, therefore, that in the face of the uncontradicted testimony of Thezan, Fitzsimmons, Brooks, and his attorney, the basic premises of Brooks' § 1983 theory have not been established.

---

**2.** On the issue of whether Thezan spoke to Brooks on the day of the lineup the following statements are made in the 12(e) and 12(f) submissions:
    46. Thezan did not talk to the victim on the day of the lineup.
    *Defendants' Statement of Undisputed Facts*
    46. Plaintiff believes that a jury could conclude from all the facts that Thezan is not truthful in his assertion.
    *Plaintiff's 12(f) Statement of Genuine Issues*
Of course, the plaintiff's belief as to whether a jury would believe Thezan's testimony is not relevant and does not raise a genuine issue of fact. Plaintiff does not identify, as he must on this motion "all the facts" which would make it possible for the jury to disbelieve Thezan. Because plaintiff has identified no such facts, no genuine issue is raised.

**3.** In his 12(f) statement, plaintiff asserts that Fitzsimmons did not ask Morgan if she wanted to listen to the voice but instead instructed her to listen to the voices of the people in the lineup.

*See 12(e) and 12(f) statement* at # 32. Plaintiff again submits no evidence that would support that conclusion, but even if he did, plaintiff's version does not help him. Plaintiff does not indicate Fitzsimmons forced Morgan to listen to the voices against her will; he simply told her to listen to the voices after the visual lineup proved unhelpful. There is no indication of any coercion, threat, or inducement against Morgan to engage in the voice lineup.

**4.** Again, the 12(e) and 12(f) statements show the absence of a genuine or material fact dispute on the issue of who selected the phrase to be used. *See 12(e) and 12(f) statement* at # 33. Even if Fitzsimmons selected the words to be spoken (a phrase used by the attempted rapist), plaintiff has not demonstrated how this selection influenced Morgan to identify Brooks, or how it amounts to an inducement or encouragement to identify Brooks.

Brooks has failed to show 1) Thezan and Fitzsimmons knew Brooks was not the attempted rapist when they arrested him and had him submit to a visual lineup, 2) the visual lineup was misleading or unnecessarily suggestive, 3) the visual lineup, if misleading, caused Morgan to make a positive voice identification, 4) the defendants engaged in coercive or suggestive conduct encouraging Morgan to identify Brooks, and 5) the voice identification and the visual lineup made it possible for Morgan to connect the pieces at the preliminary hearing. The evidence demonstrates none of these facts is present in this case. Absent these facts, Thezan and Fitzsimmons cannot be responsible for Brooks' loss of liberty following the preliminary hearing.[5]

Nonetheless Brooks insists that summary judgment is improper because there remain conflicting inferences arising from the undisputed facts. Morgan was unable to identify Brooks in the visual lineup but was able to identify him in court during the preliminary hearing. Out of these two facts, Brooks contends an inference is raised that the defendants influenced Morgan. As plaintiff argues in his memorandum:

> [T]he fact that the victim was unable to make any corporeal identification at the lineup but was able unequivocally to identify plaintiff three weeks later is sufficient to give rise to an inference that "something happened" after the lineup to influence the witness's ability to make the in court identification.

*Plaintiff's Surreply Memorandum* at 5–6. Brooks argues the reasonable inference is that the "something" that "happened" was attributable to the defendants.

This argument is nothing more than an unsupported assertion that plaintiff is entitled to a presumption that any in-court identification was the result of Thezan and Fitzsimmons' wrongdoing. Brooks has cited no authority to support such a presumption and the law of summary judgment clearly runs counter to that assumption. *See Celotex*, 106 S.Ct. at 2553. Brooks has provided no admissible evidence to justify the conclusion. Moreover, the evidence submitted in this case thoroughly undermines the very presumption (in actuality, an allegation raised in Brooks' pleading) Brooks asks the court to accept. In light of the uncontradicted testimony of Thezan, Fitzsimmons, Brooks' attorney and even Brooks himself, all demonstrating no evidence of wrongdoing on Thezan and Fitzsimmons' part (not even evidence that Thezan or Fitzsimmons hinted that Brooks was the defendant), the inference favorable to Brooks (that Thezan and Fitzsimmons are wrongdoers) is unreasonable. Brooks is not entitled to unreasonable inferences on this motion.

### Conclusion

Thus, the court finds there are no genuine issues of material fact and defendants are entitled to judgment as a matter of law. Defendants motion for summary judgment is granted.

IT IS SO ORDERED.

5. A plaintiff in a 1983 action must show the conduct of the defendant caused plaintiff to suffer the injury he complains of. *Jackson v. City of Joliet*, 715 F.2d 1200, 1202–03 (7th Cir. 1983). Implied in the concept of deprivation is causation. *DeShaney v. Winnebago Cty. Dept. of Serv.*, 812 F.2d 298, 302 (7th Cir.1987). The defendants had argued on the motion to dismiss that they could not have caused Brooks' injury because Morgan made an independent, positive identification of Brooks at a preliminary hearing. The court rejected the theory that the positive identification broke the causal chain be-

cause if Thezan and Fitzsimmons created a suggestive environment subjecting Brooks wrongfully to a misleading lineup, "the subsequent in-court identification by the victim, far from being surprising, was expected." (*Order*, at 4).

It seems clear on this motion, however, that Morgan's identification was made independently, free from coercion by defendants. Brooks suffered no deprivation in the sense that the conduct of the defendants did not "appreciably increase the probability" of Brooks' misidentification. *DeShaney*, 812 F.2d at 302.