THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFERSON BAPTISTE *et al.*, Defendants-Appellants.

First District (1st Division)    No. 60975

Opinion filed April 5, 1976.

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek and James M. Sammons, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Donald M. Devlin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Jefferson Baptiste and John Perkins were indicted for the attempt murder of and the aggravated battery on James Perkins (not related to the defendant John Perkins). Defendants were tried together. The jury found Baptiste guilty of both charges, but found Perkins guilty only of the aggravated battery charge. Both defendants appeal contending that they were denied a fair trial because the trial judge unduly restricted their cross-examination of the State's witnesses, ridiculed the defense attorney in the presence of the jury, permitted the State to comment on the defendants' failure to make a statement upon arrest, improperly instructed the jury and refused to allow defense counsel personally to examine the prospective jurors during the *voir dire*. Defendant Perkins also appeals on the ground there was no evidence to prove that he was guilty under the theory of accountability and that for that reason his motion for a directed verdict in his favor should have been granted.

James Perkins lived in the basement apartment at 600 West 60th Street. His brother Avery and his parents lived on the first floor. On April 13, 1973, about 3 a.m., James and Avery had caused the arrest of Baptiste's brother and John Perkins in connection with a shooting. At approximately 5 p.m. the same day, James Perkins encountered the two defendants in the hallway of the building as he was leaving his parents' apartment. Baptiste, who had a revolver in his hand, told James that he was in the bag and that he (Baptiste) was firing on him, meaning that James should not have informed the police on Baptiste's brother and John Perkins. After James told Baptiste that he would not testify against Baptiste's brother and John Perkins, James turned to enter his parents' apartment and Baptiste and John Perkins continued up the stairs. At that moment, Avery Perkins, James' brother, opened the door of their parents' apartment and saw Baptiste aiming a gun at his brother James. He yelled a warning and then Baptiste fired three shots at James, one of which struck him in the head. Baptiste admitted firing the gun at James, but testified he did it in self-defense because James was pointing a shotgun at him.

■■ The guilt of defendant Perkins rests on a theory of accountability. (Ill. Rev. Stat. 1973, ch. 38, §5—2(c).) There was sufficient evidence of his guilt on this theory to justify the denial of his motion for a directed verdict. In view of the manner in which this appeal is disposed of, we expressly refrain from reviewing the evidence against this defendant or expressing any opinion regarding his guilt or innocence. *People v. McKinney* (1970), 126 Ill. App. 2d 339, 348, 261 N.E.2d 797.

■■ Both defendants contend that they were denied a fair trial because they were denied the right to cross-examine James and Avery about charges against them of assault, unlawful use of weapons, unlawful possession of weapons, the fact that they were on probation and that violation of probation charges were filed against them. Offers of proof of these matters were denied. This evidence, together with any promises of leniency the State might have given in return for their testimony in this trial, was sought to show the bias or interest of James and Avery. The trial judge ruled that questions regarding the pending charges could not be asked, but that inquiries about promises of leniency would be allowed. When, however, defense counsel stated that he did not believe any promises had been made, the trial judge then refused to allow any questions as to promises of leniency. This ruling was erroneous and clearly prejudicial to the defendants.

In *Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218, defense counsel was denied permission to inquire into a government witness' status as a prisoner of the Federal authorities. The Supreme Court stated:

> "Cross-examination of a witness is a matter of right. *The Ottawa*, 3 Wall. 268, 271. Its permissible purposes, among others, are * * * that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased [Citations.]" 282 U.S. 687, 691-92, 75 L. Ed 624, 627, 51 S. Ct. 218.

The court then pointed out that it was permissible for the defense to bring out that the witness was in jail to show "that his testimony was biased because given under promise or expectation of immunity * * * ." 282 U.S. 687, 693, 75 L. Ed. 624, 628, 51 S. Ct. 218.

■■ In *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, the United States Supreme Court followed *Alford* in holding that a defendant's sixth amendment right to confront the witnesses against him included the right to cross-examine a witness as to his probationary status at the time of trial so as to reveal any interest, bias or ulterior motives affecting the witness' testimony. The court held that the jury was entitled to hear the defense theory that the witness was biased because he was a juvenile on probation and this might "afford a basis for an inference of undue pressure because of [his] vulnerable status as a probationer." (415 U.S. 308, 318, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105.) The reasoning in *Davis* is equally applicable to this case where the key prosecution witnesses were on probation at the time of trial and might, therefore, be vulnerable to pressure, either real or imagined, from the authorities in connection with continuing their probationary status.

The Illinois Supreme Court in *People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835, drew a distinction between convictions offered to

impeach a witness and the more particular bias which could result where either pending charges could be manipulated to pressure a witness to give testimony desired by the State or the witness testified in a way he believed would curry favor with the authorities:

"A distinction must be made between proof of conviction of an infamous crime for the purpose of impeaching credibility of a witness and the use of arrest or indictment as evidence of bias or interest on the part of the witness.

A witness may be impeached by attacking his character by proof of conviction of an infamous crime. * * *

However, showing interest or bias on the part of a witness is also an accepted method of impeachment, and even in jurisdictions where evidence of arrest or indictment is not ordinarily admissible to impeach credibility generally, the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely." (28 Ill. 2d 396, 400-01.)

In *People v. Barr* (1972), 51 Ill. 2d 50, 51, 280 N.E.2d 708, the Supreme Court reversed the defendant's conviction where he was restricted from cross-examining a witness about the arrest of the witness or his being charged with a crime. The court stated these facts "would reasonably tend to indicate that his [the witness'] testimony might be influenced by interest, bias, or a motive to testify falsely." (See also *People v. Galloway* (1974), 59 Ill. 2d 158, 319 N.E.2d 498.) The probation violations pending against James and Avery Perkins would be sufficient to create a bias which a jury might consider sufficient to affect their credibility.

■■■ That defense counsel could not show beforehand that any promises of leniency had been made, was not an adequate reason for denying counsel the right to ask questions concerning the pending charges. In *Alford* the court said:

"Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. *Knapp v. Wing,* 72 Vt. 334, 340; *Martin v. Elden,* 32 Ohio St. 282, 289. It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. * * * To say that prejudice can be established only by showing that cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a

fair trial. [Citations omitted.]" (282 U.S. 687, 692, 75 L. Ed. 624, 628, 51 S. Ct. 218.)

See also *People v. Velez* (1966), 72 Ill. App. 2d 324, 332, 219 N.E.2d 675.

■■ The State also argues that the nature of James Perkins' bias and interest was self-evident and that any additional bias he may have had as the result of the pending charges against him would have been merely cumulative. The credibility of James Perkins as one of two key prosecution witnesses was of paramount importance because defendant Baptiste testified that he shot James in self-defense. It was for the jury to decide whether the pending charges against James provided a further motive to offer false testimony beyond the self-evident interest of a victim of a crime. The ruling of the trial court restricting cross-examination prevented the jury from hearing evidence which could have affected the credibility of James and Avery. The defendants had the right to present this evidence to the jury under their theory that the State's witnesses were unbelievable. (*People v. Beard* (1966), 67 Ill. App. 2d 83, 214 N.E.2d 577.) The defendants were denied a fair trial.

For this reason, it is not necessary to consider the other points raised by defendants. The judgment of the circuit court is reversed and the cause remanded for a new trial.

Reversed and remanded for a new trial.

GOLDBERG, P. J., and O'CONNOR, J., concur.