THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
SAUD JODIE, Defendant-Appellant.

First District (1st Division)   No. 78-148

Opinion filed November 19, 1979.—Rehearing denied December 26, 1979.

Glenn E. Gutsche, of Chicago (Mark W. Solock, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Wesley H. H. Ching, and Terrence M. Burns, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Saud Jodie (defendant) was indicted for aggravated battery upon Steven Flores and also for attempted murder of Steven Flores, Joseph Flores and Lorenzo Flores. After trial by jury, defendant was acquitted on all of the attempted murder charges and was found guilty of the aggravated battery of Steven Flores. Defendant was sentenced to 3 to 10 years. He appeals.

In this court defendant contends the trial judge erroneously permitted testimony by a police officer regarding refusal of defendant to talk to the police and the prosecutor referred to this refusal in closing argument; the trial court prohibited defendant from inquiring into the nature and severity of criminal charges pending against Steven Flores; the trial court unduly restricted cross-examination of Joseph Flores by

defendant's counsel; the trial court wrongfully permitted the State to rehabilitate a witness by use of prior consistent statements; defendant's motion to suppress statements made as a result of physical and psychological coercion were wrongfully denied; defendant's motion to quash his arrest and suppress statements was wrongfully denied since the arrest of defendant was without probable cause and was illegal and the maximum sentence imposed was excessive.

Steven, Lorenzo and Joseph Flores are brothers. Steven Flores testified that Lorenzo Flores was driving his car westbound on 91st Street on July 13, 1974. Steven was in the front passenger seat. At about 7 p.m. Lorenzo stopped the car behind a brown automobile which was double parked so that the Flores car could not pass. Lorenzo sounded his horn without result. When an opportunity arose, Lorenzo drove his car around the standing vehicle. There were a number of persons in this automobile. Steven further testified that their car continued west and halted for a stop sign on 91st Street and Exchange Avenue. The brown car they had previously passed came up on their right. The driver of the brown car and the passenger in the front seat shouted obscenities. Steven made an in-court identification of defendant as the passenger in the other car. He observed defendant at the stop sign for 20 to 25 seconds.

The Flores' car then continued for a half block to their mother's home. Steven testified he heard the screeching of tires and saw the brown automobile driving toward Lorenzo's car. Steven saw the passenger, identified as defendant, leaning out of the window with a gun in his hand. Steven heard several shots and felt a sharp pain in his shoulder. He identified the person who had shot him as the defendant. The parties stipulated that various complications resulted because of the wound inflicted upon Steven. They agreed that a bullet could not be removed and remains lodged in his shoulder. Steven testified to diminished use of his left shoulder. Immediately after the shooting, Lorenzo drove Steven to a hospital about one mile away.

Lorenzo Flores testified to passing the brown automobile. In corroboration of the testimony of Steven, Lorenzo also stated that as he halted the car in front of his mother's house, he noticed the brown car coming closer and heard gunshots. Lorenzo identified defendant in court as the man seated in the front passenger seat of the other car who leaned out of the window with a gun in his hand. Lorenzo saw this person for about three seconds. He heard gunshots, saw Steven was wounded and then drove Steven to the hospital.

Two other brothers, Louis and Joseph Flores, arrived at the hospital. Joseph Flores, a Chicago police officer, was off duty on that day. They left the hospital sometime later in Joseph's car. When they had gone some distance, Lorenzo thought he saw in front of them the same brown car in

which the assailant of Steven had been a passenger. They followed this car. Lorenzo looked at the passenger in the front seat and told Joseph that it was the same brown car and that the passenger in front was the assailant of Steven.

The brown car stopped and Joseph stopped his vehicle. He drew his gun, announced to the occupants of the brown car that he was a police officer and ordered them out of the car. The car lurched forward and a number of shots were exchanged. Thereafter the Flores' automobile pursued the brown car for quite a distance through various streets. When the brown car was blocked by traffic, defendant left the car, together with a passenger therefrom, and ran away. Joseph Flores pursued. Defendant and the other passenger from his car then ran in different directions. Other police officers were summoned. Officer Leon Armstead came to the scene. He was told by Joseph Flores that two males of Puerto Rican ancestry had fled the scene in different directions. This occurred at or near the intersection of Cornell Avenue and 78th Street in Chicago. In due course, as will later be shown, Officer Armstead arrested the defendant.

Officer David Laughlin testified that he interviewed defendant at the police station. He informed defendant of his constitutional rights. He then asked defendant what had occurred. Defendant responded that he "shot at the dude on 91st Street and I shot at the dude chasing me in the car." Officer Laughlin did not ask the defendant to sign a written statement. The statement by the defendant was recorded in narrative form on Officer Laughlin's police report.

The defense called Nivea Arroyo who had witnessed the scene between defendant and Joseph Flores. She testified that she saw Flores drive his car near the other car and then shoot without provocation. She saw Joseph drive after the other car after it sped from the scene. Other testimony and trial events will be stated as required.

Before considering the contentions of defendant in order, we note that no point is raised on the sufficiency of the testimony to prove defendant guilty of aggravated battery upon Steven Flores. As above shown, the testimony is sufficient to prove defendant guilty of aggravated battery without any reasonable doubt and in an overwhelming fashion.

## I.

Defendant made a motion *in limine* to exclude post-*Miranda* statements he made to the police concerning his communication with his attorney. The trial court denied this motion.

Officer Roy Martin spoke with defendant in the police station about 9:30 p.m. on July 13, 1974. He testified he advised defendant of his constitutional rights. The officer asked defendant if he understood his

rights and defendant responded affirmatively. Officer Martin then testified that defendant told him he had spoken to an attorney who had advised him not to say anything. Martin testified defendant added that on advice of his counsel he refused to discuss the incident. The officer then terminated his interview.

When the State's Attorney referred to this incident during argument to the jury, counsel for defendant objected. The court sustained the objection. When the State's Attorney again mentioned this incident, counsel for defendant objected. The trial court sustained the objection and ordered the remarks of the State's Attorney stricken.

It is legally correct, as defendant urges, that this type of evidence has an unacceptable potential for prejudice and is a denial of due process of law. See *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, and *United States v. Hale* (1975), 422 U.S. 171, 180, 45 L. Ed. 2d 99, 95 S. Ct. 2133.

■■ However the record shows an objection was made by defense counsel to this argument. The trial court sustained the objection and ordered the remarks stricken. This prompt admonition to the jury cured any prejudicial error which may have resulted from the incident. (*People v. Singletary* (1979), 73 Ill. App. 3d 239, 250, 391 N.E.2d 440, and cases there cited.) Furthermore, in view of the completely overwhelming strength of the People's case, we are satisfied beyond a reasonable doubt that this evidence was harmless. See *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824. See also *People v. Green* (1979), 74 Ill. 2d 444, 453, 386 N.E.2d 272, and *People v. Beller* (1979), 74 Ill. 2d 514, 525, 386 N.E.2d 857.

## II.

It appears that criminal charges were pending against Steven Flores. The State made a motion *in limine* requesting that inquiry by defendant into these charges be prohibited. The trial court ruled that the defendant could inquire of Steven Flores, the complaining witness, as to whether there were unrelated criminal charges against him and whether the State had promised him anything in connection with the charges or had offered to drop them. The trial court ruled that he would not permit defense counsel to inquire into the nature of the charges. This ruling of the trial court was followed. Counsel for defendant brought out the pendency of criminal charges against the complaining witness. Also the witness testified on cross-examination that he did not expect favorable treatment in exchange for his testimony.

Defendant urges that this ruling by the trial court nullified the right of defendant to complete and proper cross-examination of the complaining

witness. Defendant cites cases such as *People v. Steel* (1972), 52 Ill. 2d 442, 288 N.E.2d 355, and *People v. Baptiste* (1976), 37 Ill. App. 3d 808, 347 N.E.2d 92.

We are required initially to state the general principle "that the trial court is vested with 'substantial discretion' to determine both the manner and scope of cross-examination." (*People v. Coles* (1979), 74 Ill. 2d 393, 395-96, 385 N.E.2d 694.) As stated in *Coles*, "the trial court's decision on such issues will not be overturned absent a showing of a 'clear abuse' of that discretion 'resulting in manifest prejudice.' " (74 Ill. 2d 393, 396.) In the case before us, our examination of the record convinces us that the able and experienced trial judge was correct in his ruling and that defendant suffered no prejudice therefrom.

■ Generally speaking the defendant was entitled to show the bias, if any, that the complaining witness might have had against him. In this regard the important point was that the complaining witness, Steven Flores, testified twice on cross-examination he did not expect any consideration or leniency from public authority. It would seem that the complaining witness would, of course, have bias against defendant in view of his testimony that the defendant without reason inflicted severe and permanent injuries upon him. However, in our opinion, the decision of the trial court was proper in the amount of latitude which he permitted in the cross-examination.

*Steel* is cited by defendant as implicitly recognizing the right of defendant to inquire of the nature of the charges against the complaining witness. *Steel* appears to us to approve a limitation on cross-examination quite analogous to that permitted by the trial judge in the case before us. It does not appear from the record here that the charges against the complaining witness involved his credibility. (*Steel*, 52 Ill. 2d 442, 447.) Similarly in *Baptiste*, 37 Ill. App. 3d 808, 811, counsel for defendant conceded that no promises of leniency had been made and the trial court then refused any questions regarding the pending charges.

On the contrary, in the case before us the trial court did permit cross-examination on the issue of whether leniency had been offered to the complaining witness by the State. No showing of manifest prejudice to defendant is made concerning any rulings by the trial court. (*People v. Halteman* (1956), 10 Ill. 2d 74, 86, 139 N.E.2d 286.) No offer of proof was made by counsel for defendant. *People v. Curtis* (1970), 123 Ill. App. 2d 384, 388, 259 N.E.2d 397.

In *People v. Eddington* (1979), 77 Ill. 2d 41, 46, 394 N.E.2d 1185, the court reached the same result in a rather similar case. There, as in the instant case, the arrest of the complaining witness on the unrelated charges occurred after the events involved in the case at bar. The

supreme court noted that the importance of the pendency of the unrelated charge was linked directly to the issue of "any bias or interest arising out of this later charge." We find no prejudicial error here.

## III.

Defendant urges an unfair restriction by the trial court upon cross-examination of Officer Joseph Flores. Joseph testified he was carrying a .45-caliber automatic pistol because of police regulations. Defendant urges that refusal by the trial court to allow cross-examination on this point deprived defendant of his constitutional right of confrontation.

■■ Here again the general principle must be noted that "[g]reat discretion lies with the trial court in controlling the scope of cross-examination * * *" (*People v. Jones* (1975), 60 Ill. 2d 300, 306, 325 N.E.2d 601). In the case before us the issue is the defendant's guilt of aggravated battery against Steven Flores. The two persons there involved are the defendant and Steven Flores. The police regulations and the type of weapon that Joseph Flores carried at a time subsequent to this aggravated battery appear to us to be completely immaterial on this issue. We note here again the acquittal of defendant with reference to the charges of attempted murder against Joseph and Lorenzo Flores and even against Steven Flores. We find no error in this regard.

## IV.

This contention concerns a matter totally unrelated to the subject of this appeal. It involves testimony of Officer Joseph Flores concerning evidence which transpired after the aggravated battery of the complaining witness, Steven Flores. It involves the alleged charge of attempted murder of Officer Joseph Flores regarding which defendant was acquitted. Officer Flores testified that while he was pursuing defendant, defendant used a child as a shield to prevent gunfire by the officer. On cross-examination, counsel for defendant showed that Officer Flores had not mentioned this incident in one of his official reports. On redirect examination the trial court permitted Officer Flores to show that he had signed other reports which did mention the incident.

■■ Defendant here claims that this was an improper attempt to rehabilitate the witness by a prior consistent statement. We disagree. Defendant's brief cites *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363. In response the People cite *People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409. Actually *Powell* cites *Clark*. Both cases agree that where the charge is made or inference drawn that a witness has testified falsely, it is proper to show that he gave the same story or stated the same facts prior to the time of the alleged fabrication. Under the authority of both of these cases, we find no error in this regard.

## V.

On direct examination Officer David Laughlin testified that he spoke to the defendant while in custody and advised him of his constitutional rights. He then asked the defendant what happened. The defendant said, "I shot at the dude on 91st Street and I shot at the dude chasing me in the car." The officer asked defendant how he got away from Officer Flores. Defendant said "he used kids as a shield."

As shown, the testimony regarding the children pertained to a charge with reference to which defendant was acquitted. The same is true concerning "the dude chasing me in the car." Thus, the only statement by defendant material to the case before us, is the statement about a shot at "the dude on 91st Street."

Almost one-half of the voluminous trial record reflects a pretrial motion by defendant to suppress these statements which the defendant allegedly made on the grounds of physical and psychological coercion. In the process of hearing this motion, the People called 12 police officers and two other witnesses. The defense introduced testimony by Angel Rodriquez who was the driver of the automobile in which defendant was a passenger at the time of the aggravated battery upon Steven Flores. Defendant also testified in support of this motion. Defendant's attorney also testified that when he saw the defendant in court on July 14, 1974, defendant had cuts and bruises on his wrists and facial injuries.

The State introduced evidence that defendant was not injured by the police while he was in custody. Louis Flores testified that he himself kicked and punched at defendant. Louis' brother Joseph pulled Louis away and defendant fell over. This occurred shortly after defendant was taken into custody. One police officer testified that nothing unusual happened at that time. There is evidence by the police in support of the attack upon defendant by Louis Flores. There is virtually unanimous police testimony which denies that defendant was abused. Defendant denied that Louis Flores beat him and testified he was beaten by the police.

At the conclusion of the lengthy hearing, the trial judge commented upon the fact defendant's injuries did not justify a bandage or other treatment. The trial judge also commented upon carelessness of the police but he found specifically that defendant had not been struck "by the police at the scene of his arrest in the automobile or at the police station * * *." The trial court accordingly ruled that the statements made by the defendant were voluntary and the motion to suppress was accordingly denied.

The evidence in this regard can be summarized by describing it as contradictory. There is evidence in support of the motion that defendant was mistreated and received his injuries while in police custody. There is

directly contrary evidence that no injuries were inflicted on defendant by the police. There are also charges by the defendant of discrepancies in the police evidence.

■■ In this situation the burden of going forward with the evidence and the burden of proving that the confession was voluntary rested upon the State. (Ill. Rev. Stat. 1977, ch. 38, par. 114—11(d).) In passing upon the charges of coercion, the trial judge need not be convinced of the voluntary nature of a confession beyond reasonable doubt. It is the duty of this court not to disturb the finding and result reached by the trial court unless we can say that the order of the trial judge is contrary to the manifest weight of the evidence. (*People v. Medina* (1978), 71 Ill. 2d 254, 258, 375 N.E.2d 78.) In the case before us, we see issues of conflicting testimony and credibility. However, we cannot say that the result reached by the trial court is contrary to the manifest weight of the evidence.

## VI.

Defendant next urges that he was arrested without probable cause and therefore the statement which he made should have been suppressed as the fruit of an illegal arrest.

On the issue of probable cause for the arrest, we must first consider the factual background. Officer Armstead was summoned to the area of 78th Street and Cornell Avenue. He spoke to Officer Joseph Flores who told him that the offenders were both male Puerto Ricans who had run away on foot. One of these persons had gone in an easterly direction and the other to the west. The population in that area of Chicago consists generally of black people.

Armstead also testified that a black man whom he did not know told him that he had seen one of the fleeing men at a designated parking lot about one block away. Armstead went to the parking lot. He saw no person of Puerto Rican ancestry there. The officer then returned toward 78th Street and Cornell Avenue. He then saw defendant standing on the corner of 76th Street and Cornell. The officer testified that he knew the defendant's name. He walked over and placed the defendant under arrest. He testified that he knew the defendant before that day.

The standard of facts required to establish probable cause for arrest without a warrant has been stated and repeated many times. The arresting officer must have knowledge sufficient to warrant a person of reasonable caution to believe that an offense has been committed and that the person being arrested is the offender. The facts need not be sufficient to prove guilt beyond a reasonable doubt. The facts may be established by events incompetent at trial. *People v. Blitz* (1977), 68 Ill. 2d 287, 292, 369 N.E.2d 1238, *cert. denied* (1978), 435 U.S. 974, 56 L. Ed. 2d 68, 98 S. Ct. 1622, and cases there cited.

■■ In this instance, the burden rests upon the State of going forward with evidence, but the ultimate burden of proof of lack of probable cause rests upon defendant. This court may not disturb the conclusion reached by the trial court unless we find it to be "manifestly erroneous." *People v. Ross* (1978), 60 Ill. App. 3d 857, 861, 377 N.E.2d 230, and cases there cited.

■ In the case before us, we agree with the result reached by the experienced trial judge. We find that the arresting officer had probable cause to arrest the defendant.

## VII.

Defendant contends that the trial judge did not consider the presentence investigation. The record shows to the contrary.

Defendant urges that the sentence of 3 to 10 years includes an excessive maximum. Counsel urges that defendant had a record only of juvenile delinquency and a misdemeanor offense of possession of marijuana. At the time of the incident, defendant was 19 years old and was gainfully employed and supporting his family. At the time of the offense and at the time of sentencing, aggravated battery was a Class 3 felony. (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(d).) The penalty was a minimum of one year and a maximum of 10 years. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(b)(4).) Defendant urges that the new sentencing act, not applicable here, changed aggravated battery to a Class 3 felony with possible sentence of from 2 to 5 years. Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(6).

Recent decisions of the Supreme Court of Illinois have established a guideline that this court may exercise its power to reduce a sentence only if "the trial court abused its discretion * * *." The supreme court has pointed out that the trial judge is in the best position "to observe and evaluate the myriad factors which comprise the sentencing determination." (*People v. Perruquet* (1977), 68 Ill. 2d 149, 156, 368 N.E.2d 882.) Subsequently, the supreme court held that a sentence imposed by the trial court will not be disturbed "unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose." *People v. Heflin* (1978), 71 Ill. 2d 525, 545, 376 N.E.2d 1367, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848.

■■ Mindful of this teaching, we conclude that the sentence in this case should not be disturbed.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.