THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM J. FOLEY, Defendant-Appellant.

Second District   No. 81—174

Opinion filed October 20, 1982.

G. Joseph Weller and John J. Barrett, both of State Appellate Defender's Office, of Elgin, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (Phyllis J. Perko and Nancie S. Hudell, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

The defendant, William J. Foley, was charged by information with armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)). After a jury trial, he was convicted of robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—1(a)) and was sentenced to a seven-year term of imprisonment. The defendant appeals, contending that the trial court committed reversible error by restricting (1) his cross-examination of a crucial State's witness and (2) his questioning of a defense witness.

This case presents the question of whether or not a State's witness, who was an accomplice to the robbery defendant was charged with, can be cross-examined as to whether he had received probation for the robbery. Here, the trial court held that the question of probation could not be explored in the absence of evidence that an agreement had been reached that the witness was going to receive probation for his testimony in this case.

At trial, Keith Kramer testified that he was working at the Pride gas station in Oswego, Illinois, on the evening of May 1, 1980. At about 9:15 p.m. Kramer was counting coins in the cash register when an individual entered the station and said, "Give me the money." Kramer, without looking, told the individual to wait until he was done counting. Then the individual restated his demand and added, "This is a stick-up." Kramer looked up and saw that the robber was armed. He observed the offender from a distance of two feet for approximately 15 to 20 seconds. Kramer indicated that the robber was approximately five feet 10 inches or five feet 11 inches tall, was wearing blue jeans, tennis shoes, a white tee shirt, and a nylon stocking which fully covered his face. Kramer also testified that the perpetrator had shoulder-length, dishwater-blond hair and no facial hair except a mustache. He indicated at trial that as the robber ran from the scene of the crime he limped, favoring his right leg. Kramer had earlier stated, at a preliminary hearing, that the offender appeared to be favoring his left leg.

Kramer was shown two groups of photographs of possible suspects. He was unable to identify anyone from the first group of six photographs. This group did not include a picture of the defendant. When the sheriff's office showed Kramer a second group of photos, he positively identified defendant as the offender.

Four other individuals were standing at the self-service islands of the gas station at the time of the robbery. They were shown the same photographic array as was Kramer, but they did not identify the defendant from the photos.

Kenneth Massingill testified for the State that he and defendant planned to rob the gas station in question. They had purchased a toy gun and a pair of nylon stockings for the purpose. Massingill then drove to the parking lot from which he could see the Pride gas station.

Massingill remained in the automobile while defendant Foley walked over to the gas station. He added that he did not watch defendant during the time of the robbery. Massingill added that he had previously been convicted of felonies in both Kendall and Du Page counties. He indicated that no promises had been made by the State's Attorney's office nor by the sheriff's office in exchange for his testimony.

On cross-examination Massingill revealed that he had been locked out of his room at the Aurora YMCA for nonpayment, and he had moved in to defendant Foley's apartment. He testified that he had been charged with armed robbery of the Pride gas station, but had pleaded guilty to robbery. Cross-examination of Massingill regarding the disposition of the robbery charge was not allowed. In sustaining the State's objections, the trial court stated that there would have to be a showing of an agreement or promise with the State's Attorney prior to exploring Massingill's probationary status. During closing argument, the trial court again precluded defense counsel from commenting on the fact that Massingill had been placed on probation for the May 1, 1980, robbery of the Pride gas station. Massingill also stated on cross-examination that he had been convicted of an unrelated attempted robbery in Du Page County and that, after having been arrested on that charge, he had informed the Du Page County authorities that the defendant in the present case also was involved in an attempted robbery in Du Page County. Defendant was later precluded from offering evidence that he had been acquitted of this charge.

Theodore Lane and James Hall testified for the defense. They indicated that they had been incarcerated in the Kendall County jail

with Massingill and they had conversed with him. According to Lane, Massingill told him that he had committed the robbery and that "he was going to go for probation *** because he had a perfect fall guy." Massingill told the witnesses that he had a perfect fall guy or someone to go down for him. Massingill denied this and stated he had only told them that he hoped to be placed on probation.

Ronda Davis and Barbara Rockwell testified that the defendant had a disability in that his right leg was approximately four inches shorter than his left leg. Both witnesses remarked that the defendant wore corrective boots to compensate for the shorter leg; that they had never observed the defendant wear a shoe on his right foot which was not built up; and that they had never seen him wear any footwear other than two pairs of corrective boots. In addition, Ms. Rockwell stated that to the best of her knowledge the defendant did not own a pair of tennis shoes. Ms. Davis and another witness, Raymond Rockwell, testified that the defendant was wearing glasses on May 1, 1980, because he was unable to see without them.

The defendant presented an alibi defense at trial. Both Raymond and Barbara Rockwell testified that defendant was with Raymond Rockwell at 8:50 on the evening in question when they picked Barbara Rockwell up from work. They dropped Barbara off at her home at 9:10, went to get some beer and returned to her home at 9:20. At about 9:30 Massingill came to her house. Later in the evening at about 11 defendant went home and Barbara Rockwell went to a restaurant known as the Golden Bear with some friends. Massingill paid for everyone.

During the trial defense counsel asked Ronda Davis if she knew Phillip Massingill, who was Kenneth Massingill's brother. When asked how tall Phillip Massingill was, the court sustained the State's objection. Outside the presence of the jury defense counsel urged that this evidence was relevant because the man who robbed the gas station was described as having long blond hair, and being approximately five feet 10 inches tall. Defense counsel urged that Davis would testify that Phillip Massingill was approximately the same height as defendant Foley, rather than the five feet two inches as Massingill had testified. Therefore, he urged, Phillip Massingill would easily fit the description of the individual who committed the robbery. The court refused to allow defense counsel to explore this absent some showing that Phillip was involved in the case.

After closing arguments, the trial court ruled that the toy pistol was not a dangerous weapon. The trial court reduced the charge from armed robbery to robbery. After deliberation the jury returned a

guilty verdict. Defendant Foley was sentenced to seven years with the Department of Corrections.

The defendant contends before this court that both his cross-examination of Kenneth Massingill, a key witness for the State, and his direct examination of a defense witness, Ronda Davis, were improperly restricted by several rulings of the trial court. We address first the contention that the trial court erred in not allowing defense counsel to ask Kenneth Massingill during cross-examination whether he had been placed on probation for the instant offense. He also alleges that it was error to preclude defense counsel from commenting during closing argument that Massingill had been sentenced to probation for the present offense. As indicated, the court reasoned that the question of probation could not be examined or discussed in the absence of evidence that an agreement had been reached that the witness was going to receive probation for his testimony in this cause.

Certain general principles govern the use of testimony to impeach a witness's credibility on the basis of bias, interest, or motive to testify falsely. It is well established that the demonstration of interest, bias, or motive to testify on the part of a witness is an accepted method of impeachment. (*People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1020, 420 N.E.2d 837; *People v. Eddington* (1979), 77 Ill. 2d 41, 46, 394 N.E.2d 1185, *cert. denied* (1980), 445 U.S. 944, 63 L. Ed. 2d 777, 100 S. Ct. 1340; *People v. Kellas* (1979), 72 Ill. App. 3d 445, 452, 389 N.E.2d 1382.) The fact that a witness has been arrested or charged with an offense may be shown or inquired into where it would reasonably tend to indicate that his testimony might be influenced by bias, interest, or a motive to testify falsely. (*People v. Freeman* (1981), 100 Ill. App. 3d 478, 480-81, 426 N.E.2d 1220; *People v. Barr* (1972), 51 Ill. 2d 50, 51, 280 N.E.2d 708.) Similarly, the jury is entitled to hear the defense theory that a witness who is on probation at the time of trial is biased because he might be vulnerable to pressure, either real or imagined, from the authorities in connection with continuing his probationary status. *People v. Kellas* (1979), 72 Ill. App. 3d 445, 453, 389 N.E.2d 1382; *People v. Baptiste* (1976), 37 Ill. App. 3d 808, 811, 347 N.E.2d 92; see *Davis v. Alaska* (1974), 415 U.S. 308, 318-19, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105, 1111.

■ Although the scope of cross-examination is generally within the trial court's discretion, the widest latitude should be allowed the defendant for the purpose of establishing bias, motive, or interest on the part of a witness (*People v. Pizzi* (1981), 94 Ill. App. 3d 415, 420, 418 N.E.2d 1024; *People v. Lenard* (1979), 79 Ill. App. 3d 1046, 1049, 398 N.E.2d 1054; *People v. Barr* (1972), 51 Ill. 2d 50, 51-52, 280

N.E.2d 708), particularly when the witness is an accomplice (*People v. Lake* (1978), 61 Ill. App. 3d 428, 378 N.E.2d 364; *People v. Bergeron* (1973), 10 Ill. App. 3d 762, 768, 295 N.E.2d 228). Cross-examination for this type of impeachment is a matter of right subject only to the trial court's broad discretion to preclude repetitive or unduly harassing interrogation and to confine the cross-examination to a proper subject matter. Moreover, where the defendant's theory is that the prosecution's witness is unbelievable, it is error not to allow the cross-examination on matters which would reasonably tend to show bias, interest, or motive to testify falsely. (*People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1020, 420 N.E.2d 837; *People v. Lenard* (1979), 79 Ill. App. 3d 1046, 1050, 398 N.E.2d 1054; *People v. Lake* (1978), 61 Ill. App. 3d 428, 431, 378 N.E.2d 364.) However, evidence of bias, interest or motive must not be remote or uncertain, because the evidence must potentially give rise to the inference that the witness has something to gain or lose by his testimony. *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1020, 420 N.E.2d 837.

Nonetheless, it is clear the admissibility of this type of impeachment is not dependent on whether defense counsel can prove beforehand that promises of leniency had been made or any expectations of special favor existed in the witness' mind. *People v. Freeman* (1981), 100 Ill. App. 3d 478, 481, 426 N.E.2d 1220; *People v. Kellas* (1979), 72 Ill. App. 3d 445, 453, 389 N.E.2d 1382; *People v. Baptiste* (1976), 37 Ill. App. 3d 808, 812, 347 N.E.2d 92.

■ We believe it was error for the cross-examination of Massingill, the State's witness, to have been so restricted that the defense was unable to explore the possibility that the witness may have been biased or testifying falsely. This same problem arose in *Davis v. Alaska* (1974), 415 U.S. 308, 316-17, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105, 1110, where the court recognized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." In *Davis* the witness was on probation at the time of his testimony and, as in the case before us, it was reasonably possible that the witness may have felt as though he was in a vulnerable position, whether real or imagined, regarding his status as a probationer, and such subtle pressure could have induced him to testify against the defendant.

In light of the principles set forth above, we believe the defendant should have been allowed to cross-examine Massingill so that a record could be made from which to argue why he may have been biased or motivated to testify falsely. The defendant was entitled to expose the jury to this inference.

At this point the question becomes whether, as the State asserts, this error was harmless beyond a reasonable doubt. The standard of review of an error affecting a Federal constitutional right is whether it was harmless beyond a reasonable doubt, that is, whether there is a reasonable possibility that the error might have contributed to the accused's conviction. *People v. Freeman* (1981), 100 Ill. App. 3d 478, 481, 426 N.E.2d 1220; *Chapman v. California* (1967), 386 U.S. 18, 23-24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 827-28.

Our review of the record shows that Massingill was a key witness for the prosecution. Although he was not the only person to place the defendant at the scene of the crime, we cannot say his testimony did not affect or contribute to the jury's verdict. Despite the fact that the robbery victim's identification of defendant was positive, Massingill's testimony was crucial.

Although Massingill did not actually observe the defendant commit the robbery in issue here, he testified that he and the defendant had planned the burglary; that the defendant bought a toy gun and a pair of nylon stockings in preparation for the robbery; that he parked the car near the Pride gas station and waited in the vehicle while the defendant proceeded toward the gasoline station; and that the defendant returned to the automobile and told Massingill to get out of there. The jury was also aware that the witness had been convicted of the same robbery offense and had informed the Du Page County authorities that the defendant was involved in the instant robbery. Given those facts, we believe that Massingill was a key witness and that the limitation upon the jury's ability to be apprised of all the potential facts relating to the witness's credibility and motivation for testifying was prejudicial, not harmless beyond a reasonable doubt.

Because of the possibility that they may arise on retrial, we address two other evidentiary issues raised by defendant.

■ During the cross-examination of Massingill he testified that both he and defendant Foley had been involved in an attempt robbery in Du Page County. He indicated they had both been charged with attempt robbery. When asked whether Foley was acquitted of that charge, the State objected and the court sustained that objection. Defendant contends that the jury should have been allowed to hear that Foley was acquitted of the charge in Du Page County. While the trial court may have erred in this regard, we believe that on retrial Massingill should not be allowed to testify about defendant's prior criminal record, regardless of whether there were prior charges, acquittals or convictions.

Defendant also contends he should have been allowed to elicit in-

formation about Massingill's brother, Phillip. Our review of the record shows that defense counsel was properly precluded from delving into this area. The record did not show that Phillip Massingill was involved in the case in any way.

For the reasons stated, defendant's conviction is reversed and this cause is remanded for a new trial.

Reversed and remanded.

UNVERZAGT and VAN DEUSEN, JJ., concur.